# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) |
|---|---|
| v. | ) |
|  | ) 2:14-cr-205 |
| PRICE MONTGOMERY, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Pending before the Court are two motions to suppress: a Motion to Suppress Physical Evidence filed by Defendant Price Montgomery and joined by Defendant James Perrin (ECF No. 199) and a Motion to Suppress Tracking, GPS, and Pen Register filed by Defendant Montgomery (ECF No. 201). The former Motion seeks to suppress evidence obtained by law enforcement through (1) the search of Defendant Montgomery's vehicle; (2) the arrests of Defendants Montgomery and Perrin and the search of their persons; and (3) the search of Defendant Montgomery's residence. The latter Motion seeks to suppress all evidence obtained from various tracking and GPS devices, pen registers, and warrants for searches of cell phones on the basis that the applications for the authorization of these devices lacked probable cause.

For the reasons that follow, both Motions to Suppress, ECF Nos. 199 & 201, are denied.

**I. Motion to Suppress Physical Evidence, ECF No. 199**

Defendants Montgomery and Perrin assert that law enforcement violated their Fourth Amendment rights through the search of Defendant Montgomery's vehicle, the arrests and searches of Defendants Montgomery and Perrin, and the search of Defendant Montgomery's residence. In essence, Defendants argue that law enforcement agents—who were conducting

surveillance on Defendant Montgomery's home while other investigators attempted to get a search warrant for the home—saw Defendants Montgomery and Perrin leave the home and then prematurely conducted a traffic stop, without reasonable suspicion, in an effort to detain the Defendants and search them without a warrant. Because Defendants were leaving the place to be searched and law enforcement did not have a warrant, Defendants assert that the stop, search, and seizure violated their Fourth Amendment rights as articulated in *Bailey v. United States*, 568 U.S. 186 (2013).[1] Similarly, because investigators incorporated the evidence seized during the allegedly unconstitutional search of Defendant Montgomery's car into the affidavit of probable cause for the search warrant application for the residence, Defendants further argue that that search warrant was invalid and the evidence discovered during the search of Defendant Montgomery's residence must be suppressed.

The Government asserts that *Bailey v. United States* is inapplicable to this case because Defendants were not detained merely to permit law enforcement to execute a search warrant at Defendant Montgomery's residence—rather, according to the Government, law enforcement had probable cause to lawfully detain Defendants and search the vehicle, pursuant to the automobile exception to the search warrant requirement, based on information gained from the wiretap investigation.[2] Accordingly, claims the Government, none of the searches violated the Fourth Amendment, the search warrant for Defendant Montgomery's home was valid, and Defendants' Motion to Suppress Physical Evidence should be denied.

---

[1] *Bailey* held that the rule established in *Michigan v. Summers*, 452 U.S. 692 (1981), which allows police officers executing a search warrant to detain and search the occupants of the premises, is limited to occupants in the immediate vicinity of the place to be searched. 568 U.S. at 200–01.

[2] This Court previously affirmed the validity of the wiretap orders in this case. (*See* Op. of Jan. 31, 2018, ECF No. 387.)

2

### A. Legal Standard

It is settled law that the Fourth Amendment generally requires police to secure a warrant before conducting a search, subject to certain well-established exceptions. *See, e.g.*, *Maryland v. Dyson*, 527 U.S. 465, 466 (1999); *California v. Carney*, 471 U.S. 386, 390–91 (1985); *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is the search of a vehicle. *Carroll v. United States*, 267 U.S. 132, 149 (1925).

Under the automobile exception to the warrant requirement, police may search a vehicle without a warrant if there is probable cause to believe the vehicle contains contraband. *Dyson*, 527 U.S. at 466 (citing *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996); *Carroll*, 267 U.S. at 149 ("[I]f the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid.")). Further, where police have probable cause to search a vehicle, they may conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages, that may conceal the object of the search. *United States v. Ross*, 456 U.S. 798, 825 (1982).

A law enforcement officer has probable cause to conduct a search when, based on the totality of the circumstances, "the facts available to [the officer] would 'warrant a [person] of reasonable caution in the belief' that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)). "The test for probable cause is not reducible to 'precise definition or quantification.'" *Id.* (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "All we have required is the kind of 'fair probability' on

3

which 'reasonable and prudent [people,] not legal technicians, act.'" *Id.* at 244 (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983)).

**B.     Analysis**

Based on the record in this case, the Court concludes that law enforcement had probable cause to believe that the vehicle in which Defendants departed from Defendant Montgomery's residence contained evidence of drug trafficking; therefore, the search did not violate the Fourth Amendment under the automobile exception to the warrant requirement.

The Court will briefly describe the basis for this probable cause, as accurately detailed in the Government's briefs and as set forth in the testimony of law enforcement officers involved in the investigation at the evidentiary hearing in this matter. Starting on June 6, 2014, law enforcement officers were aware that Defendants Montgomery and Perrin were preparing to travel to New Jersey to obtain a shipment of heroin based on phone calls and text messages intercepted by law enforcement using wiretaps on Defendant Montgomery's phone and other methods of surveillance. (Gov't's Resp. to Defs.' Suppl. Brs. in Supp. of Mot. to Suppress Physical Evid., ECF No. 424, at 2.) On June 7, 2014, a surveillance team observed Defendants arrive at the location in New Jersey where agents believed Defendant Montgomery met with his heroin supply source, a business known as Inferno Limits Paintball. (*Id.*) Defendant Montgomery carried a brown backpack, in which investigators suspected he transported heroin and/or money, into the building. (*Id.* at 2, 3.) Based on the surveillance of the Defendants in New Jersey and information learned from the wiretap, DEA Task Force Officer Matthew Trusedell testified at the evidentiary hearing: "We believed that Mr. Montgomery and Mr. Perrin had obtained a quantity of heroin, [and they] were bringing it back to Pittsburgh." (*Id.* at 2–3.) Early the next morning (June 8, 2014, at approximately 5 AM), Defendants traveled back to Pittsburgh in Defendant Montgomery's vehicle

4

and arrived at Defendant Montgomery's residence. (*Id.* at 2–3.) Law enforcement officers observed as Defendant Montgomery again carried a brown backpack from the vehicle into the residence, while Defendant Perrin carried a suitcase, which seemingly due to its weight and/or contents, he held in a "curling" fashion up against his chest. (*Id.* at 3.) Within a matter of hours that same day, investigators observed those Defendants exit the residence and return to Defendant Montgomery's vehicle, with Defendant Montgomery again carrying a brown backpack. (*Id.*)

Based on evidence gathered during the course of the investigation, including a previous stop of one of Defendant Montgomery's associates where contraband was discovered in a similar high-end bag, Officer Truesdell testified during the evidentiary hearing that law enforcement officers believed that Defendant Montgomery and his associates used high-end bags—like the brown backpack that Defendant Montgomery was carrying when he allegedly retrieved the heroin shipment in New Jersey, when he returned to his residence in Pittsburgh, and again when he left his residence shortly before law enforcement stopped his vehicle—to transport either money or heroin. (*Id.*) At this point, believing Defendants had just returned to Pittsburgh with heroin and that the vehicle—and, more specifically, the brown backpack—contained contraband or evidence of a crime, law enforcement stopped and detained Defendants Montgomery and Perrin and searched the vehicle. (*Id.* at 4–5.) A search of the backpack, which was on the passenger side of the vehicle, revealed 125 bricks of heroin. (*Id.* at 5.)

These facts, not to mention the vast amount of other information known to officers through the wiretap investigation (which is described in detail and with precision in the affidavit of probable cause in the application for a search warrant for Defendant Montgomery's house, an application presented to a judge nearly simultaneously with the search of the car occurring), gave the officers substantial reason to believe that there was at least a "fair probability" that the vehicle

and/or the backpack would contain heroin or money involved in heroin trafficking. *See Harris*, 568 U.S. at 243, 244; *Gates*, 462 U.S. at 235. The Court concludes this belief was objectively reasonable based on the totality of the circumstances. This was sufficient to justify both the stop and the search of the vehicle and its containers under the automobile exception to the warrant requirement. *See Ross*, 456 U.S. at 825. Accordingly, the search did not violate the Fourth Amendment and the evidence discovered during that search will not be suppressed.

Similarly, because the search of the car was not improper, the inclusion of the results of the search (specifically, the 125 bricks of heroin discovered in the backpack) in the affidavit of probable cause in support of the application for a search warrant for Defendant Montgomery's residence was not improper. However, even if the Court were to disregard the reference to heroin discovered during the search of the vehicle (one handwritten sentence at the end of the affidavit), the 135-page affidavit still contains sufficient evidence to form probable cause to issue the search warrant. The affidavit relied on a substantial amount of evidence gathered during law enforcement's lengthy investigation into Montgomery's alleged drug trafficking organization, and in particular, a large number of wiretap intercepts in which Defendant Montgomery allegedly discusses drug trafficking with numerous other individuals, including Defendant James Perrin. (*See* Defs.' App. to Pre-Trial Mots., ECF No. 197-4, at 484–618 ("App.").) The affidavit also describes previous trips that Defendant Montgomery's associates took to New Jersey to obtain shipments of heroin, as well as the trip to New Jersey that Defendants Montgomery and Perrin took on June 7, 2014, and their arrival back in Pittsburgh the next day with (law enforcement reasonably believed) a shipment of heroin. (*Id.* at 608.) Accordingly, after reviewing the evidence included in the 135-page affidavit of probable cause, the Court concludes that the issuing judge had a substantial basis for concluding that probable cause existed to issue the search warrant, with

or without the inclusion of the 125 bricks of heroin discovered in the search of Defendant Montgomery's vehicle. *See Gates*, 462 U.S. at 238–39 ("[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960))). The warrant authorizing the search of Defendant Montgomery's residence was valid, and the evidence obtained from that search will not be suppressed. Defendants' Motion to Suppress Physical Evidence, ECF No. 199, is denied.

## II.    Motion to Suppress Tracking, GPS, and Pen Register, ECF No. 201

In this Motion, Defendant Montgomery challenges ten (10) orders authorizing the use of (1) pen registers and trap and trace devices on Defendant Montgomery's and Defendant Perrin's cell phones, (2) tracking devices on vehicles, and (3) GPS records for Defendant Montgomery's phone on the basis that the applications for the authorization of these devices lacked probable cause.[3] Defendant Montgomery argues that all information and evidence obtained from these devices must be suppressed because the orders authorizing them are invalid. The Government counters that each of the challenged orders was valid and supported by probable cause.

### A.    Legal Standard

---

[3] Defendant Montgomery identified the challenged Orders in his Proposed Order submitted with his Motion to Suppress, ECF No. 201-1, as follows:
- (1) January 28, 2014 Order at CP-02-MD-0000449-2014 (C.C.P. Alleg. Co.);
- (2) March 28, 2014 Order at CP-02-MD-0000456-2014 (C.C.P. Alleg. Co.);
- (3) April 22, 2014 Order at CP-02-MD-0002187-2014 (C.C.P. Alleg. Co.);
- (4) April 22, 2014 Order at CP-02-MD-0002188-2014 (C.C.P. Alleg. Co.);
- (5) May 5, 2014 Order authorizing pen register and trap and trace device on 814-359-8391;
- (6) May 12, 2014 Order at CP-02-MD-0002603-2014 (C.C.P. Alleg. Co.);
- (7) May 28, 2014 Order at CP-02-MD-0002829-2014 (C.C.P. Alleg. Co.);
- (8) August 26, 2014 Order at 14-0712M (W.D.Pa.);
- (9) September 22, 2014 Order at 14-0893M (W.D.Pa.); and
- (10) September 22, 2014 Order at 14-0894M (W.D.Pa.)

In approving or denying an application for a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. The legal standard for a district court judge reviewing the issuance of a search warrant is highly deferential; as the Supreme Court has explained and as this Court noted above, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238–39 (quoting *Jones*, 362 U.S. at 271). A reviewing court may not conduct a de novo review of an issuing judge's probable cause determination. *Id.* at 236.

**B.     Analysis**

After reviewing all of the challenged orders, the underlying applications for those orders, and the affidavits accompanying those applications, this Court concludes that in all ten (10) instances, the issuing judge had a substantial basis for concluding that probable cause existed to authorize the involved order.[4] The Court will briefly explain the basis for probable cause in each challenged order.

As to the January 28, 2014, Order for a pen register ("January 28 Order"), Defendant Montgomery alleges that the application lacked probable cause because it "was based on a single sale of cocaine . . . with no reason to believe that Defendant would be engaging in any future drug-trafficking activity." (Def.'s Mot. to Suppress Tracking, GPS & Pen Registers, ECF No. 201, at 11 ("ECF No. 201").) The Court concludes that this sale of cocaine (and Defendant's use of the

---

[4] The Court notes that a significant portion of Defendant Montgomery's argument that the challenged orders lacked probable cause relied on the alleged invalidity of the April and May 2014 wiretap orders, which this Court determined were valid in its Opinion of January 31, 2018, ECF No. 387. Accordingly, for orders issued after April 17, 2014, the issuing judge properly considered the evidence and information obtained from those wiretaps in its probable cause determination.

target phone to arrange the drug deal) in conjunction with the Defendant's prior history of drug offenses and regular contact with other drug dealers, all of which are described in the affidavit in support of the application (App., ECF No. 197-4, at 14–20), gave the issuing judge a substantial basis to conclude that there was probable cause to believe a pen register on Defendant Montgomery's phone would yield relevant information central to the ongoing drug-trafficking investigation.

Defendant Montgomery next asserts that the March 28, 2014, Order for the continuation of the pen register ("March 28 Order") lacked probable cause because it was based on information gained as a result of the January 28 Order. (ECF No. 201, at 11.) Because the January 28 Order was valid, the application for the March 28 Order properly included information gained as a result of the January 28 Order. (*See* App., ECF No. 197-4 at 39–64.)

As to the April 22, 2014, Orders for the tracking devices on two of Defendant Montgomery's cars (an Audi and an Acura), Defendant Montgomery alleges that the applications lacked probable cause because the averments in the affidavit "do not make it probable that Defendant will be continuing to engage in drug-trafficking or other illegal activity." (ECF No. 201, at 11.) The Court disagrees. The affidavit in support of the applications spans twenty-five (25) pages and sufficiently connects Defendant Montgomery to both vehicles; includes descriptions of numerous confidential informants stating that Defendant Montgomery was a drug dealer whose source was located in New Jersey; and connects the vehicles to trips to New Jersey, drug deals, and drug busts. (App., ECF No. 197-4, at 160–85.) The issuing judge had a substantial basis to conclude there was probable cause to believe the tracking devices would lead to relevant information vital to the ongoing drug-trafficking investigation.

Defendant Montgomery next challenges three orders granting access to location and/or other data from Defendant Montgomery's and Defendant Perrin's phones, one issued on August 26, 2014, and two issued on September 22, 2014. (ECF No. 201, at 12.) According to the Government, all three of these orders "were issued in connection with the [G]overnment's efforts to locate both [D]efendant Montgomery and [D]efendant Perrin, who were fugitives." (Gov't's Resp. to Def.'s Mot., ECF No. 402, at 4–5.) Defendant Montgomery challenges these orders on the basis that the orders were not based upon probable cause (1) that Defendant was a fugitive (and knew he was a fugitive); (2) that Defendant was in possession of any phones; and (3) that use of this investigation method was necessary. (ECF No. 201, at 12.) The Court has reviewed the challenged orders, applications, and affidavits, and concludes that based on the totality of the circumstances, the issuing judge had a substantial basis to conclude that there was probable cause to believe that Defendant Montgomery and Defendant Perrin were fugitives, that Defendant Montgomery was in fact using the phone, that the requested information would lead to evidence of Montgomery's location, and that the use of this tactic was proper at that juncture. (App., ECF No. 197-4, at 679–92.)[5]

Finally, although he does not specifically address them in his Motion, Defendant Montgomery challenges the orders issued on May 5, May 12, and May 28, all in 2014, as generally lacking probable cause. (*See* Proposed Order, ECF No. 201-1.) After review of the challenged orders, applications, and affidavits, the Court does not see—and Defendant Montgomery does not articulate—any grounds for concluding that the issuing judge did not have a substantial basis to

---

[5] The United States Supreme Court recently addressed the issue of cell-site location information and an individual's expectations of privacy for Fourth Amendment purposes in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), and held that the Government must generally obtain a search warrant supported by probable cause before acquiring a suspect's cell-site location information from a wireless carrier. 138 S. Ct. at 2221. In this case, the Government accessed Defendant Montgomery's GPS location and other data from his cell phone pursuant to a search warrant, therefore comporting with the Supreme Court's decision in *Carpenter*.

conclude there was probable cause to issue the orders. This Court will not exclude the evidence obtained from these orders.

Accordingly, the Court concludes that for each challenged order, the issuing judge had a substantial basis to conclude that there was probable cause to issue the orders, and the resulting evidence will not be suppressed.[6] Defendant Montgomery's Motion to Suppress Tracking, GPS, and Pen Register is denied.

### III. Conclusion

For the reasons stated in this Memorandum Opinion, the Motion to Suppress Physical Evidence filed by Defendant Montgomery and joined by Defendant Perrin, ECF No. 199, is DENIED. The Motion to Suppress Tracking, GPS, and Pen Register filed by Defendant Montgomery, ECF No. 201, is also DENIED.

An appropriate Order will follow.

Mark R. Hornak
United States District Judge

Dated: July 30, 2018

cc: All counsel of record

---

[6] The Court notes that even if one or more of the challenged orders were lacking probable cause, the good faith exception would apply to this case and prevent suppression of the evidence. *See United States v. Leon*, 468 U.S. 897 (1984); *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993). All of the searches at issue here were authorized by a court order, and based on everything in the record, this Court concludes that the law enforcement officers reasonably relied on the involved order's authority in carrying out the involved searches. Defendant Montgomery's Motion does not contend otherwise.