## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) 2:14-cr-00205 |
| PRICE MONTGOMERY | ) |
| and JAMES PERRIN | ) |
| Defendants. | ) |

## AMENDED OPINION[*]

**Mark R. Hornak, Chief United States District Judge**

In November 2018, a jury found Price Montgomery and James Perrin guilty of all charges alleged against them in a Second Superseding Indictment. For both Montgomery and Perrin, those charges included unlawful possession of a firearm under 18 U.S.C. § 922(g)(1). After the jury's verdict, but before the Court could sentence Montgomery and Perrin, the Supreme Court issued its decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). *Rehaif* interpreted § 922(g) to include a new element—that the defendant knew he belonged to a class of people who could not lawfully possess a firearm. Since that was not the law at the time of Montgomery and Perrin's trial, the Court had not instructed the jury that it must find beyond a reasonable doubt that both men knew their prohibited status. To the contrary, the Court affirmatively instructed the jury that it did *not* need to find that Montgomery and Perrin knew their prohibited status to convict under § 922(g)(1).

Both now move for a new trial on their § 922(g)(1) counts based on *Rehaif*. To uphold Montgomery and Perrin's conviction, this Court would need to look at evidence the jury never saw and then apply that evidence to an element the jury never considered. That is something the Court cannot do. For the reasons that follow, a new trial on the § 922(g)(1) counts is necessary. Montgomery and Perrin's Motions (ECF Nos. 737 and 745), are **GRANTED**.

---

[*] This Amended Opinion corrects an error included in the Conclusion section of the Court's New Trial Opinion. (ECF No. 783.) The Court's Order (ECF No. 784), remains unchanged and in effect.

1

# I.  FACTS & PROCEDURAL HISTORY

In April 2016, a federal grand jury returned a Second Superseding Indictment against Price Montgomery, James Perrin, and two (2) other co-defendants. (ECF No. 153.) The top line charges were among some of the most serious criminal offenses the United States can bring. The United States alleged that Montgomery and Perrin orchestrated a multi-state heroin distribution conspiracy. And even more serious, the United States alleged that Montgomery murdered Tina Crawford, a federal witness, as she left her Pittsburgh home to meet with federal prosecutors about that drug conspiracy. (*Id.* at 12–14.)

Also among Montgomery and Perrin's alleged offenses were unlawful possession of a firearm under 18 U.S.C. § 922(g)(1)—Count III against Perrin and Count IV against Montgomery. (*Id.* at 3–5.) The United States alleged that both Montgomery and Perrin fell into § 922(g)(1)'s category of individuals who could not lawfully possess a firearm, because both had prior felony convictions. (*Id.*) Only the § 922(g)(1) charges—Counts III and IV—are at issue today, so the Court's recitation of the facts relates only to those counts.

The case against Montgomery and Perrin went to trial, with each represented by his own counsel. Shortly before the trial began, Montgomery, Perrin, and the United States filed their joint stipulations. (Joint Stipulation, ECF No. 472.) Two (2) of the joint stipulations related to Montgomery and Perrin's § 922(g)(1) charges. (*Id.* at 1.) In short, the parties stipulated that all the firearms referenced in Counts III and IV were manufactured outside of Pennsylvania; that both defendants had prior felony convictions; and that neither had his right to possess a firearm restored before the date alleged in the Second Superseding Indictment. (*Id.*) The effect of the stipulation was to prevent the United States from introducing any evidence about Montgomery and Perrin's past convictions beyond what was mentioned in the stipulation. For the § 922(g)(1) counts, then,

2

the brunt of the United States' evidence at trial would relate to whether Montgomery and Perrin knowingly possessed the firearms.

At trial, the United States did just that, introducing evidence that it believed proved that both Perrin and Montgomery knowingly possessed the firearms alleged in the Second Superseding Indictment. The United States did not, however, offer any evidence related to Montgomery and Perrin's past convictions. Instead, as the parties agreed, the United States read the following stipulation to the jury during its case-in-chief:

> The parties stipulate and agree to the following facts and testimony:
>
> One, the parties stipulate and agree that all 16 firearms charged in the felon-in-possession counts of the second superseding indictment, Counts 3 and 4, Joint Exhibits Nos. J17-1 through J17-16, were manufactured outside of Pennsylvania and, therefore, traveled across state lines prior to being present in Pennsylvania.
>
> James Perrin, Price Montgomery, and the United States stipulate and agree that prior to June 8, 2014, James Perrin and Price Montgomery were each convicted of a crime which was punishable by imprisonment for a term exceeding one year, and at no time thereafter was either defendant's ability to lawfully possess a firearm restored.

(ECF No. 694, at 20:2–16.)

Neither Montgomery nor Perrin presented any evidence to rebut the United States' case-in-chief. Instead, both defendants made oral motions for judgment of acquittal on all counts, including the § 922(g)(1) charges. (*Id.* at 200:7–213:22.) The Court, viewing the evidence in the light most favorable to the United States, denied both oral motions. (*Id.* at 213:23–219:21.) Montgomery then rested. (*Id.* at 227:9–18.) Followed by Perrin. (*Id.* at 227:21–23.)

After the parties rested, the Court went over the proposed final jury instructions with counsel. Neither defendant objected to the Court's proposed instructions as to Count III or IV. (*Id.*

3

at 230:7–253:5.) The parties elected to have the Court instruct the jury before closing arguments.

(ECF No. 695, at 21:17–22:15.) As to Counts III and IV, the Court instructed the jury as follows:

> Count 3 of the indictment charges James Perrin with possessing a firearm on or about June 8, 2014, after he was convicted of committing a felony crime prior to that date, in violation of Title 18 of the U.S. Code, Section 922(g)(1).
>
> Count 4 charges Price Montgomery with possessing a firearm on or about June 8, 2014, after he was convicted of committing a felony crime prior to that date, in violation of Title 18, U.S. Code, Section 922(g)(1).
>
> To find a defendant guilty of possessing a firearm after a prior felony conviction, the prosecution must prove each of the following three elements beyond a reasonable doubt:
>
> First, that the defendant was convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year.
>
> Second, that after that conviction, the defendant knowingly possessed a firearm as charged in the count of the indictment.
>
> Third, that the defendant's possession was in or affecting interstate or foreign commerce.
>
> In order to find a defendant guilty of the offense at Counts 3 or 4, you must find that the prosecution proved that before the date the defendant is charged with possessing a firearm, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year.
>
> Now, in this case, the prosecution and defendant Montgomery have stipulated that prior to June 8, 2014, defendant Montgomery had been convicted of a crime punishable by a term of imprisonment exceeding one year.
>
> The prosecution and defendant James Perrin have stipulated that prior to June 8, 2014, the defendant Perrin had been convicted of a crime punishable by a term of imprisonment exceeding one year.
>
> Ladies and gentlemen, to satisfy the first element, you need only find beyond a reasonable doubt the defendant was, in fact, convicted of that crime and the conviction was prior to the date of the possession of the weapon as charged in the indictment. *It is not*

4

*necessary that the prosecution prove that the defendant knew that the crime was punishable by imprisonment for more than one year*, nor is it necessary for the defendant to have been sentenced to imprisonment for more than one year.

You have heard evidence and/or a stipulation that a defendant was convicted prior to possessing a firearm of a felony crime punishable by imprisonment for a term exceeding one year. This prior conviction was brought to your attention only because it tends to establish one of the elements of the crime of felon in possession of a firearm as set out in the indictment.

You are not to speculate as to the nature of this conviction. You may not consider the prior conviction in deciding whether a defendant was in knowing possession of a firearm that he is charged with possessing which is a disputed issue in this case.

The fact that a defendant was found guilty of another crime on another occasion does not mean that he committed the felon in possession crime charged in the indictment and you must not use his guilt of the prior crime as proof of the felon in possession crime charged in the indictment except for the one element of that crime which I mentioned.

You may find the defendant guilty of the felon in possession crime only if the prosecution has proved beyond a reasonable doubt all of the elements of that crime.[1]

(*Id.* at 68:7–71:1 (emphasis added).)

The parties then gave their closing arguments and the jury began its deliberations. On November 13, 2018, the jury returned a guilty verdict on all counts against Montgomery and Perrin, including the § 922(g)(1) charges at Counts III and IV.

A little over seven (7) months after the jury's verdict the Supreme Court issued its opinion in *United States v. Rehaif*, which interpreted the elements in § 922(g). At that time, Montgomery and Perrin were still awaiting sentencing. In November 2019, Montgomery's counsel moved to

---

[1] The Court also instructed the jury in greater detail on § 922(g)(1)'s interstate commerce element. (ECF No. 695, at 71:2–72:4.) Since that element is not at issue, the Court omitted it from the reproduction of the final jury instruction above in the interest of brevity.

vacate his client's § 922(g)(1) conviction based on the Supreme Court's holding in *Rehaif.* (ECF No. 737.) Soon after, Perrin joined Montgomery's motion. (ECF No. 745.) The United States responded to Montgomery and Perrin's motions and opposed any relief based on *Rehaif.* (ECF No. 757.) The Court set the motions for oral argument and directed the parties to address certain then-recent decisions interpreting *Rehaif.* (ECF Nos. 770 and 773.) The parties provided oral argument, then rested on their written briefs. (ECF No. 776.) The Court now decides Montgomery and Perrin's motions.

## II.    **LEGAL STANDARD**

Neither Montgomery nor Perrin pointed to a specific rule of criminal procedure when they moved for relief under *Rehaif.* Rather, they simply requested that the Court vacate their convictions on the § 922(g)(1) counts. (ECF No. 737, at 8; ECF No. 745, at 2.) The United States, in response, argued that only two (2) rules of criminal procedure could apply here. The first is Federal Rule of Criminal Procedure 29, which sets the standard for seeking a judgment of acquittal. The second is Federal Rule of Criminal Procedure 33, which sets the standard for seeking a new trial. The Court, then, must determine which rule applies in Montgomery and Perrin's case.

Rule 29(c)(2) provides that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). The Court must uphold the verdict "unless no reasonable juror could accept the evidence as sufficient to support the defendant's guilt beyond a reasonable doubt." *United States v. Fattah,* 914 F.3d 112, 183 (3d Cir. 2019) (citing *United States v. Coleman,* 811 F.2d 804, 807 (3d Cir. 1987)).

Rule 33 allows the Court to "vacate any judgment and grant a new trial if the interest of justice so requires." *See* Fed. R. Crim. P. 33(a). When the basis for the defendant's motion is something other than new evidence, the defendant must move for a new trial within fourteen (14)

days of the verdict. *See* Fed. R. Crim. P. 33(b)(2). The Court, however, can consider Rule 33 motions filed after the fourteen-day deadline if the defendant establishes excusable neglect for his failure to move earlier *See* Fed. R. Crim. P. 45(b)(1)(B); *see also United States v. Kennedy*, 354 F. App'x 632, 636 (3d Cir. 2009) ("Under Federal Rule of Criminal Procedure 45(b)(1)(B), a court may extend the time prescribed under Federal Rule of Criminal Procedure 33(b)(2) due to excusable neglect."). The burden rests with the defendant seeking a new trial. *See United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006).

When the defendant's motion seeks relief based on a jury instructions error, ordinarily the defendant is not entitled to a judgment of acquittal. *See United States v. Cohen*, 301 F.3d 152, 153 (3d Cir. 2002). Instead, jury instruction errors properly call on the Court to determine whether the error warrants ordering a new trial. *See id.* ("[E]rror in the jury instructions on witness tampering should have resulted in a new trial rather than outright dismissal of the count."). As a result, the Court will treat Montgomery and Perrin's Motions as lodged under Rule 33.

## III. DISCUSSION

The only counts of conviction at issue are those under 18 U.S.C. § 922(g)(1). Section 922(g) lists nine (9) categories of people who cannot legally possess firearms or ammunition. Among those categories are people with prior felony convictions. The statute's text makes it "unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition . . . ." 18 U.S.C. § 922(g)(1). While § 922(g) does not itself contain a mens rea element, that section must be read alongside the separate penalties provision, 18 U.S.C. § 924. The penalties provision provides that "[w]hoever *knowingly* violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18

7

U.S.C. § 924(a)(2) (emphasis added).

In *Rehaif*, the Supreme Court addressed how § 924(a)(2)'s use of the word "knowingly" applies to the elements listed in § 922(g). There, the Supreme Court held that the "word 'knowingly' applies both to the defendant's conduct and to the defendant's status." *Rehaif*, 139 S. Ct. at 2194. After *Rehaif*, then, the Government must prove that the defendant "knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200. *Rehaif* involved a defendant who possessed a firearm while unlawfully in the United States—illegal or unlawful presence in the United States being another of § 922(g)'s categories of prohibited persons. *Id.* at 2194–95. But both the majority and dissent understood the decision's impact on felon-in-possession prosecutions. *Id.* at 2194; *Id.* at 2209 (Alito, J., dissenting) ("[I]n prosecutions under the most frequently invoked category, possession by a convicted felon, the majority's interpretation will produce perverse results.").

In *Rehaif*'s aftermath, the United States must now prove four (4) elements to convict a defendant under § 922(g)(1): First, that the defendant was a felon—i.e., the relevant status. Second, that the defendant knew he was a felon—i.e., knowledge of the relevant status. Third, that the defendant knowingly possessed a firearm or ammunition as defined by federal statute. Fourth, that the firearm or ammunition was in or affecting interstate commerce. *See, e.g.*, *United States v. Benamor*, 937 F.3d 1182, 1186 (9th Cir. 2019). Before *Rehaif*, courts did not interpret § 922(g) to include the second element—what the Court will call the "knowledge of status" element. In fact, courts often instructed juries on the exact opposite interpretation—telling the jury that it did not have to find that the defendant knew his prohibited status to convict under § 922(g). *Cf. United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000). And, in this trial, the Court did just that.

*Rehaif*, like any other new rule for the conduct of criminal prosecutions, applies

8

retroactively when the defendant's conviction is not yet final. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). As of now, the Court has not sentenced Montgomery or Perrin, so their convictions under § 922(g)(1) are not final. As a result, *Rehaif*'s interpretation applies to their motions for a new trial.[2]

Now, both Montgomery and Perrin seek a new trial on their § 922(g)(1) counts based on the Supreme Court's decision in *Rehaif*. But neither defendant objected to the Court's § 922(g)(1) jury instruction during trial. So the Court's review is limited to "plain error." *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005) (citing Fed. R. Crim. P. 52(b)). To grant relief under the plain error standard, the Court must conclude: (1) there was an error; (2) the error is plain— that is, clear or obvious; and (3) the error affects the defendant's substantial rights. *See id.* (citing *United States v. Olano*, 507 U.S. 725, 733–35 (1993)). If the Court concludes that the defendant established the first three (3) prongs, the Court "should exercise its discretion to correct the error if it would 'seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *United States v. Payano*, 930 F.3d 186, 192 (3d Cir. 2019) (quoting *Olano*, 507 U.S. at 732).

## A. **Excusable Neglect**

Before turning to the merits of Montgomery and Perrin's new trial motions under the plain error standard, the Court must address the timeliness of their motions. The United States questioned whether Montgomery and Perrin timely moved this Court for a new trial. (ECF No. 757, at 7.) But the United States also noted that if Montgomery and Perrin can show excusable neglect under Rule 45(b)(1)(B), then the Court can hear their motions. (*Id.* at 7–8.) The Court concludes that both Montgomery and Perrin demonstrated excusable neglect for their failure to file Rule 33(b) motions within fourteen (14) days of their guilty verdicts.

---

[2] Because Montgomery and Perrin's convictions are not yet final, the Court's Opinion need not and will not address whether *Rehaif* applies retroactively during a collateral attack on a final conviction.

The United States concedes that it "has not been prejudiced in any significant way as a result of" Montgomery and Perrin's failure to file their motions earlier. (*Id.* at 8.) What's more, the Supreme Court did not issue its decision in *Rehaif* until seven (7) months after the jury's verdict. So any motion based on *Rehaif*'s new interpretation of § 922(g)(1) was bound to be delayed past Rule 33(b)'s fourteen-day filing window. Replying to the United States' timeliness arguments, defense counsel explained why they did not immediately move the Court to dismiss Counts III and IV after the Supreme Court decided *Rehaif.* (ECF No. 763.) In that reply, Montgomery's counsel acknowledged not recognizing *Rehaif*'s impact on this case until he attended a CLE hosted by our Federal Public Defender's Office in September 2019 and prepared for trial in a separate criminal matter. (*Id.* at 1.) The Court concludes that defense counsel acted in good faith and did not seek to unduly delay further proceedings. While the length of delay is greater than that in many of the cases cited by the United States, surely all parties would agree that this is not a run-of-the-mill federal criminal case. So the Court will not deny Montgomery and Perrin their chance to seek new trial on Counts III and IV simply because they might have filed their motions a couple of months earlier in what is now a six-year-long case.[3]

## B. Error

If the jury instruction failed to include the "knowledge of status" element that *Rehaif*

---

[3] At oral argument, counsel for the United States argued two (2) additional bases for denying Montgomery and Perrin's new trial motions without reaching the merits. First, the United States, citing *Musacchio v. United States*, argued that both defendants are estopped from seeking new trial because they did not object to the jury instructions during their trial. 136 S. Ct. 709 (2016). But that case is distinguishable from this one for several reasons: (1) *Musacchio* involved a sufficiency of the evidence challenge, not a motion for a new trial; (2) the interpretation of the statute at issue there remained static throughout the trial and appeal, while here, *Rehaif* marked a major change in the operative interpretation of the felon-in-possession statute; and (3) the error in *Musacchio* involved the trial court instructing the jury it must find an element not included in the relevant statute—meaning that the court instructed the jury on all of the correct elements *plus* an unnecessary element, while here, the Court omitted an element of the offense. The United States' second additional argument relies on the "presumption of regularity." But that doctrine relates to the "existence of [a] judgment" of past conviction. *See Parke v. Raley*, 506 U.S. 20, 24 (1992). Here, as the Court explains below, the issue is not whether Montgomery and Perrin have prior felony convictions, but whether there is any evidence in the trial record that would have allowed the jury to find the "knowledge of status" element. Neither of the United States' additional arguments, therefore, counsel against deciding Montgomery and Perrin's new trial motions.

10

interpreted § 922(g) to include, then the first prong is satisfied. Montgomery and Perrin easily establish the first prong. In fact, the United States concedes that an error occurred during jury instruction. (ECF No. 757, at 9.) Here, the Court did not instruct the jury that it must find that Montgomery and Perrin knew that their prior convictions were for offenses punishable by more than one (1) year. (ECF No. 695, at 68:17–69:3.) To the contrary the Court instructed the jury to the exact opposite effect. (*Id.* at 69:23–70:1.) So an error occurred.

## C. **Clear and Obvious**

As for the second prong, Montgomery and Perrin again easily meet their burden. And the United States again acknowledges that fact. (ECF No. 757, at 9.) For an error to be "plain," the error simply needs to be clear and obvious when the Court reviews the defendant's post-trial motion. *See Henderson v. United States*, 568 U.S. 266, 279 (2013). Here, if the Court gave the same jury instruction today that it gave during Montgomery and Perrin's trial, then it would defy the Supreme Court's binding interpretation of § 922(g). So the error is no doubt "plain."

## D. **Substantial Rights**

The plain error standard's third prong requires the defendant to show that the error affects his substantial rights. *Olano*, 507 U.S. at 733–35. This requires that the defendant "make a specific showing of prejudice." *Id.* at 735. In other words, the defendant must show that the error "affected the outcome of the district court proceedings." *Id.* at 734. In the context of a jury instruction that omitted an element of the offense, our Court of Appeals most recently framed the third prong as asking whether there is a reasonable probability that the jury would have acquitted the defendant had it been properly instructed. *See United States v. Johnson*, 899 F.3d 191, 204–06 (3d Cir. 2018).

In the end, whether Montgomery and Perrin can meet the third prong comes down to what information the Court can consider during its plain error review. Montgomery and Perrin argue

11

that the Court can only consider evidence submitted to the jury. The United States, on the other hand, argues that the Court should consider Montgomery and Perrin's presentence reports showing that each served more than one (1) year in prison. The implication being that Montgomery and Perrin surely would remember their prior multi-year prison sentences, so the fact of those sentences proves the "knowledge of status" element.

The Court concludes that considering evidence not presented to the jury would require speculation inconsistent with both due process and Third Circuit case law. As a result, the Court will limit its plain error review to the trial record. The Court reaches this conclusion for two (2) reasons: First, because the cases cited by the United States to support its argument that the entire record is fair game—including presentence reports—arose in materially different circumstances than those presented here. Second, because a quartet of precedential Third Circuit decisions addressing jury instructions with missing elements hold that the Court should either refuse to speculate about what the jury could have found or should limit its inquiry to evidence actually presented to the jury. With that, considering only the jury instructions given and evidence in the trial record, the Court concludes that the error affected Montgomery and Perrin's substantial rights.

### *i. Consideration of the Presentence Reports*

The United States cited *United States v. Dominguez Benitez*, 542 U.S. 74 (2004), for the proposition that "the court may utilize not only the testimony at trial, but the entire record." (ECF No. 757, at 3.) That case involved an erroneous plea colloquy in which the district court failed "to warn [the defendant], as Rule 11(c)(3)(B) instructs, that he could not withdraw his guilty plea if the court did not accept the Government's [sentencing] recommendations." *Id.* at 79. The Supreme Court granted certiorari to decide whether relief for a violation of Federal Rule of Criminal Procedure 11 under the plain error standard requires the defendant to "demonstrate that he would

12

not have pleaded guilty if the violation had not occurred." *Id.* In answering this question, the Supreme Court held that its inquiry is "informed by the entire record." *Id.* at 83. But the Supreme Court reached that conclusion by citing its earlier decision in *United States v. Vonn* for the idea that "in assessing the effect of Rule 11 error, a reviewing court must look to the entire record, not to the plea proceedings alone." *Id.* at 80 (citing *United States v. Vonn*, 535 U.S. 55, 63 (2002)).

In *Vonn*, the Supreme Court also addressed a Rule 11 plea colloquy error. 535 U.S. at 58–59. There, the district court failed to inform the defendant that pleading guilty would mean giving up his right to the assistance of counsel—something that Rule 11(c)(3) requires. *Id.* at 60. The Supreme Court granted certiorari to address whether a court may "look[] beyond the plea colloquy to other parts of the official record to see whether a defendant's substantial rights were affected by a deviation from Rule 11." *Id.* at 61–62. Ultimately the Supreme Court held that the entire record was fair game during plain error review. But it reached that conclusion based almost entirely on its reading of the Rule 11 Advisory Committee Notes. *See id.* at 74–76 (citing Fed. R. Crim P. 11 advisory committee's note to 1983 amendments). And *Vonn* did not limit the scope of review holding to plain error review, but also to harmless error review. *Id.* ("The final question goes to the scope of an appellate court's enquiry into the effect of a Rule 11 violation, whatever the review, plain error or harmless.").

The United States argues that *Dominguez Benitez* and, by implication, *Vonn*'s "entire record" inquiry applies to plain error review of jury instructions that omit an element of the offense. (ECF No. 757, at 3.) To be sure, other courts have taken the "entire record" approach when reviewing the sort of *Rehaif* error that Montgomery and Perrin's case presents. The United States directs the Court to the Eleventh Circuit's decision in *United States v. Reed*, 941 F.3d 1018 (11th Cir. 2019). There, on direct review, the Eleventh Circuit encountered a pre-*Rehaif* jury instruction

13

that omitted the "knowledge of status" element. *See id.* at 1020–21. The Court of Appeals, quoting *Vonn*, stated that it would "consult the whole record when considering the effect of any error on [the defendant's] substantial rights." *Id.* at 1021 (first quoting *Vonn*, 535 U.S. at 59; then citing *Dominguez Benitez*, 542 U.S. at 83). The Eleventh Circuit then cited the defendant's presentence report and sentencing transcript to show that because the defendant had served more than one (1) year in prison, he no doubt knew his prohibited status. *Id.* at 1021–22. But the Eleventh Circuit never addressed why *Vonn*'s scope of review holding applies beyond the Rule 11 context, given that the Supreme Court decided *Vonn* based on the Rule 11 Advisory Committee Notes.

From the United States' thorough presentation at oral argument and the Court's own research, it appears that at least two (2) other courts of appeals follow the Eleventh Circuit's lead in applying "entire record" review to erroneous jury instructions.[4] In *United States v. Hollingshed*, the Eighth Circuit addressed jury instructions made erroneous by the Supreme Court's post-trial decision in *Rehaif*. 940 F.3d 410, 415–16 (8th Cir. 2019). There, the Eighth Circuit held that the defendant could not meet the third prong of the plain error standard because he served several prison sentences longer than one (1) year—meaning that he must have known his prohibited status. *Id.* And the Ninth Circuit, addressing substantially the same circumstances as the Eighth Circuit, reached the same result in *United States v. Benamor*. 937 F.3d at 1189. But like the Eleventh Circuit, neither the Eighth Circuit nor Ninth Circuit explained why *Vonn*'s holding should apply to review of jury instructions that omit an element.

This is not to say that no court has examined whether *Vonn* and *Dominguez Benitez*'s

---

[4] There are, of course, other recent out-of-circuit decisions interpreting *Rehaif* under the plain error standard. Indeed, new *Rehaif* follow-up cases appear several times a week. But the Court will refrain from detailing direct review decisions that involve guilty pleas, since there is no dispute that *Dominguez Benitez* and *Vonn* apply in the Rule 11 context. *See, e.g.*, *United States v. Williams*, 946 F.3d 968 (7th Cir. 2020) (guilty plea); *United States v. Lockhart*, 947 F.3d 187 (4th Cir. 2020) (en banc) (same); *United States v. Balde*, 943 F.3d 73 (2d Cir. 2019) (same); *United States v. Burghardt*, 939 F.3d 397 (1st Cir. 2019) (same).

"entire record" scope of review should apply to erroneous jury instructions. To the contrary, a recent decision by Circuit Judge Sullivan sitting by designation in the Southern District of New York thoroughly examined the issue and reached the same conclusion that this Court reaches today: *Vonn* and *Dominguez Benitez*'s scope-of-review holding is limited to review of Rule 11 errors. *See United States v. Sepulveda*, No. 18-CR-363, 2019 WL 5704398, at *12–13 (S.D.N.Y. Nov. 5, 2019). And that case presented nearly identical circumstances as those presented by Montgomery and Perrin in their new trial motions. There, Judge Sullivan noted that the *Vonn* Court reached its holding based on its reading of Rule 11 Advisory Notes—something that should carry little weight outside the context of a Rule 11 error. *Id.* And, since it largely relied on *Vonn*, the Supreme Court's decision in *Dominguez Benitez* "was expressly limited to the Rule 11 context." *Id.*

In the Court's view, *Sepulveda* hit the nail on the head—*Vonn* and *Dominguez Benitez* apply only in a limited context. After all, *Vonn* relied almost entirely on Rule 11 Advisory Committee Notes to reach its scope-of-review holding. And *Dominguez Benitez* relied almost entirely on *Vonn* when it articulated the same scope-of-review. None of the courts of appeals that have applied *Vonn* and *Dominguez Benitez* to jury instructions made erroneous by *Rehaif* explained why the "entire record" scope of review should apply outside the context of a Rule 11 error. Instead, those courts simply cited the "entire record" wording without acknowledging the context behind it.

Before turning to the Third Circuit case law that counsels against looking beyond the trial record, there is one (1) more case worth mentioning. The United States does not cite it in its brief, but *Reed* and *Sepulveda* take contrary positions on the holding in *United States v. Young*, 470 U.S. 1 (1985). In *Reed*, the Eleventh Circuit cited *Young* for the idea that "when addressing plain error,

15

a reviewing court cannot properly evaluate a case except by viewing such a claim against the entire record." *Id.* at 16. *Young* involved a trial error—improper comments by the prosecutor to the jury—which makes it somewhat more analogous to jury instruction errors. *Id.* at 3–6. But *Young*'s statement that courts should look at "the entire record," like *Vonn*'s similar statement, must be considered in the broader context of the case. Again, *Reed* simply quoted the phrase "the entire record" without discussing *Young* in more depth.

On the other hand, *Sepulveda* looked at *Young*'s "entire record" statement in context. In *Sepulveda*, Judge Sullivan noted that, while *Young* says courts should examine the entire record, the Supreme Court only considered evidence from the *trial* record. *Sepulveda*, 2019 WL 5704398, at \*12–13. And *Sepulveda* noted that *Young* never presented the Supreme Court with a reason to decide "whether the 'entire record' in the context of a claimed trial error means the entire *trial* record or the entire record before the reviewing court, including the sentencing record." *Id.* at \*12. The *Sepulveda* Court noted that it could not identify any Supreme Court case "holding that a court conducting a plain error analysis may uphold a jury verdict based on the strength of 'evidence' that was never presented to the jury." *Id.* And the Court then declined to adopt such a rule. *Id.*

Again, *Sepulveda*'s reasoning is more persuasive than *Reed*'s. In *Young*, the Supreme Court limited its analysis to evidence presented to the jury. *Young*, 470 U.S. at 16–20. And right below the line where the Supreme Court uses the phrase "entire record," it quotes an earlier decision saying that "it is particularly important for appellate courts to relive *the whole trial* imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure." *Id.* at 16 (quoting *Johnson v. United States*, 318 U.S. 189, 202 (1943) (emphasis added)). The Supreme Court's quote from *Johnson*, coupled with its own review of only the *trial* record, presents strong evidence that the Court meant "entire *trial* record" when it said, "entire record." This Court, like

16

*Sepulveda*, cannot identify any Supreme Court case that used non-trial evidence to address a jury instruction error under a plain error standard. What's more, in the ten (10) precedential Third Circuit decisions quoting *Vonn*, *Dominguez Benitez*, or *Young*'s "entire record" language, none involved our Court of Appeals using non-trial evidence to review a trial error.[5] So the cases cited by the United States do not convince the Court that it should consider the presentence reports.

## ii. *Third Circuit Case Law on Omission of an Element from Jury Instructions*

While *Vonn*, *Dominguez Benitez*, and *Young* do not persuade the Court to consider the presentence reports, Third Circuit case law affirmatively counsels against looking beyond the trial

_____

[5] *See Payano*, 930 F.3d at 193 (quoting *Dominguez Benitez*, 542 U.S. at 83) (reviewing sentencing error); *United States v. Goodson*, 544 F.3d 529, 540 (3d Cir. 2008) (reviewing Rule 11 error); *United States v. Dixon*, 308 F.3d 229, 234 (3d Cir. 2002) (citing *Vonn*, 535 U.S. at 74) (reviewing Rule 11 error); *United States v. Adams*, 252 F.3d 276, 283, 285 (3d Cir. 2001) (reviewing sentencing error); *United States v. Retos*, 25 F.3d 1220, 1232 (3d Cir. 1994) (reviewing jury instruction error, but only using trial record); *United States v. Xavier*, 2 F.3d 1281, 1287 (3d Cir. 1993) (reviewing jury instructions error, but only using trial record); *Gov't of V.I. v. Mujahid*, 990 F.2d 111, 116 (3d Cir. 1993) (citing *Young*, 470 U.S. at 15) (reviewing trial error, but only using trial record); *United Sates v. Anderson*, 859 F.2d 1171, 1175 (3d Cir. 1988) (reviewing jury instructions error, but only using trial record); *United States v. Graham*, 758 F.2d 879, 883 (3d Cir. 1985) (reviewing *Allen* charge error, but only using trial record).

Only one (1) Third Circuit decision, *United States v. Vazquez*, cites *Young*'s "entire record" language in the context of an erroneous jury instruction then alludes to events outside the trial record. 271 F.3d 93, 102 (3d Cir. 2001) (en banc) (citing *Young*, 470 U.S. at 16). The circumstances presented in *Vazquez*, however, are different than those presented here. In *Vazquez*, the en banc Third Circuit encountered a defendant who, before the Supreme Court decided *Apprendi*, received a sentence beyond the prescribed statutory maximum based on the sentencing judge's factual finding as to drug quantity. *Id.* at 101. Because the defendant's trial took place before *Apprendi*, the judge had not submitted the drug quantity element to the jury. *Id.* After *Apprendi*, the Third Circuit reviewed the defendant's appeal en banc and affirmed his sentence under a plain error standard. *Id.* at 99. Our Court of Appeals held that an *Apprendi* error—in other words, imposing an above-the-statutory-maximum sentence based on a factual finding not made by the jury—is not just a sentencing error, but a sentencing *and* trial error. *See id.* at 101–02. The Third Circuit then affirmed the sentence because the defendant could not meet the plain error standard's third prong. *See id.* at 104. In doing so, the Third Circuit briefly mentioned sentencing issues not in the trial record. *See id.* (citing U.S.S.G. § 1B1.3).

But it appears to the Court that *Vazquez* affirmed the defendant's sentence based only on the trial record. *Id.* (citing the trial evidence of drug quantity from the admission during trial of a lab report that included the drug weight). Both of the dissenting opinions in *Vazquez* support the notion that the majority affirmed the sentence because it believed there was overwhelming evidence in the trial record as to drug quantity—removing any doubt the jury would have acquitted. *See id.* at 121 (Sloviter, J., dissenting) (criticizing the majority's speculation of what the jury would have found, based on the trial record, had it been properly instructed); *id.* at 126–28 (Rendell, J., dissenting) (same). *Vazquez*, then, does not contradict the Court's reading of *Young*—that "entire record" means entire *trial* record when it comes to trial errors. And even if *Vazquez* could be read to rely on extra-trial evidence, the fact that the defendant sought *resentencing*, not retrial, provides an important distinction from Montgomery and Perrin's situation. *Id.* at 99, 101 (noting the hybrid nature of *Apprendi* errors); *id.* at 127 (Rendell, J., dissenting) (criticizing the majority's conclusion that *Apprendi* errors are hybrid errors, rather than simply sentencing errors).

record. There are four (4) precedential Third Circuit decisions involving omission of an essential element from jury instructions that guide the Court's decision here. At least one (1) of these decisions holds that a court should refuse to speculate about what the jury could have found if properly instructed. The other three (3) limit any such consideration to evidence in the trial record. Because these decisions build on one another, the Court will discuss them chronologically.

The first case is *United States v. Xavier*. 2 F.3d at 1287. There, a defendant directly appealed his conviction for aiding and abetting possession of a firearm by his brother, a convicted felon. *Id.* at 1286 (citing 18 U.S.C. §§ 2(a), 922(g)(1)). The defendant argued that the district court's failure to instruct the jury that it must find that he knew his brother's ex-felon status constituted plain error. *Id.* Our Court of Appeals agreed and reversed the defendant's conviction. *Id.* at 1286–87. In doing so, the Third Circuit noted that "omission of an essential element of an offense *ordinarily* constitutes plain error," although it declined to adopt a *per se* rule to that effect. *Id.* at 1287 (quoting *Gov't of V.I. v. Brown*, 685 F.2d 834, 839 (3d Cir. 1982)). The Third Circuit based that general rule on "the Supreme Court's instruction that due process requires 'proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged.'" *Id.* (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). While there was evidence in the record from which the jury could have inferred the defendant's guilt under a preponderance standard, the evidence was not conclusive enough to establish proof beyond a reasonable doubt. *Id.* And as a result, the Third Circuit remanded for a new trial.

The second case might be the most important: *United States v. Haywood*, 363 F.3d 200 (3d Cir. 2004). In *Haywood*, a defendant directly appealed his conviction for possession of a firearm with an obliterated serial number under 18 U.S.C. § 922(k). *Id.* at 206. The defendant argued that the United States must prove that he knew about the obliterated serial number in order to convict

18

under § 922(k)—an element that the Third Circuit had never recognized. *Id.* The Third Circuit agreed, for the first time interpreting § 922(k) to require the "knowledge of obliteration" element. *Id.* Because the defendant only raised the issue on direct appeal, the Third Circuit applied the plain error standard. *Id.* (citing *Olano*, 507 U.S. at 734–35).

Addressing the third prong, the *Haywood* Court cited *Xavier*—ultimately concluding that "the district court's failure to instruct the jury that knowledge of the obliterated serial number is an element of the crime undoubtedly had an effect on the jury's deliberations." *Id.* at 287 (citing *Xavier*, 2 F.3d at 1287). The Third Circuit then reviewed the evidence in the trial record and reversed the defendant's conviction. *Id.* Most importantly, it reversed even though "[t]he jury could have found beyond a reasonable doubt that [the defendant] knew the gun had an obliterated serial number had it been instructed of the need to do so under § 922(k)." The Third Circuit rejected the United States' invitation to engage in "pure speculation" as to what the jury *could* have found. *Id.* Instead, our Court of Appeals pointed to the defendant's due process right to proof beyond a reasonable doubt as to every element of the offense. *Id.* (citing *In re Winship*, 397 U.S. at 364). "Speculation about what the jury could have done if properly instructed," the Court concluded, "falls woefully short of that burden." *Id.*

The third relevant case is *United States v. Dobson.* 419 F.3d at 236. There a defendant convicted for participating in a broad mail fraud scheme sought retrial because the district court erroneously failed to instruct the jury that conviction required a finding of "culpable participation." *Id.* at 236. The Third Circuit, on direct review, applied the plain error standard because the defendant had not objected to the charge during trial. *Id.* Discussing the third prong, the Third Circuit reiterated its statement in *Haywood* that omission of an essential element ordinarily constitutes plain error. *Id.* at 240 (quoting *Haywood*, 363 F.3d at 207). And the Court similarly

noted *Xavier*'s holding that the third prong should be considered against "the evidence presented at trial." *Id.* (quoting *Xavier*, 2 F.3d at 1287). Reviewing the trial record, the court concluded that "the Government presented evidence from which the jury could have" convicted had it been properly instructed. *Id.* Yet the Third Circuit held that sufficient evidence "does not preclude a finding of prejudice for purposes of plain error." *Id.* (citing *Xavier*, 2 F.3d at 1287). So our Court of Appeals reversed, because there was a "reasonable likelihood" that the erroneous instruction led to an unconstitutional conviction. *Id.*

The fourth case is the most recent: *United States v. Johnson.* 899 F.3d at 204–06. There, a defendant sought retrial for his aiding and abetting the brandishing of a firearm conviction. *Id.* at 204. The defendant grounded his appeal on an intervening decision from the Supreme Court interpreting a related statute to include an element that the district court had not included in its jury instruction for the brandishing charge. *Id.* Because the defendant first raised the issue on direct appeal, the Third Circuit applied the plain error standard of review. *Id.* at 204–05. The Third Circuit reviewed the trial record and concluded that, because there was overwhelming evidence presented during trial, "there [was] not a reasonable probability that [the jury] would have acquitted [the defendant] of the aiding and abetting charges." *Id.* 205–06 (citing *Vazquez*, 271 F.3d at 104). So the Third Circuit affirmed the conviction, based only on evidence submitted to the jury during the defendant's trial. *Id.* at 206.

To be sure, there are some inconsistencies between these four (4) Third Circuit decisions. After all, *Xavier*, *Haywood*, and *Dobson*, all say that omission of an essential element ordinarily constitutes plain error. But *Johnson* did not include a similar statement. And while *Haywood* says that courts should not speculate about the jury's thought process, *Dobson* and *Johnson* examined the trial record to determine what a jury could conclude from the admitted evidence—though to

20

differing results. But across all four (4) decisions, as well as the en banc decision in *Vazquez*, there is a consistent theme: if the reviewing court decided the third prong by looking at the evidence against the defendant, it cabined its review to evidence admitted at *trial*. These decisions span decades, and none did what the United States asks this Court to do today: affirm a conviction based on evidence never submitted to the jury. The Court will not consider the presentence reports when it decides whether Montgomery and Perrin meet the third prong of the plain error standard.

### iii. *The Trial Record*

Here, the Court need not linger on whether it must entirely refuse to speculate about the jury's possible verdict—à la *Haywood*—or whether it can consider the evidence admitted during trial— à la *Xavier*, *Dobson*, and *Johnson*. That is because even if the Court considers what the jury could have found given the evidence in the trial record, the Court concludes that the jury instructions error nonetheless affected Montgomery and Perrin's substantial rights.

During the trial, the jury heard evidence that both men knowingly possessed firearms and ammunition. And it heard the joint stipulation on the interstate commerce element and the fact that both men had prior felony convictions. (ECF No. 694, at 20:10–16.) But none of that is direct evidence that either Montgomery or Perrin knew they were in the category of people who could not legally possess a firearm or ammunition. Instead, the only evidence in the trial record that somewhat relates to the "knowledge of status" element was the joint stipulation that neither Montgomery nor Perrin had his firearm rights restored prior to the date alleged in the indictment.

Although not extensively addressed in the parties' briefs, at oral argument the parties debated whether the § 922(g)(1) joint stipulation proved the "knowledge of status" element. The relevant portion of the stipulation reads: The parties "stipulate and agree that prior to June 8, 2014, James Perrin and Price Montgomery were each convicted of a crime which was punishable by

21

imprisonment for a term exceeding one year, *and at no time thereafter was either defendant's ability to lawfully possess a firearm restored.*" (ECF No. 694, at 20:10–16 (emphasis added).) The implication that might be drawn from the italicized portion of the stipulation is that Montgomery and Perrin knew their prohibited status (and they in fact belonged to the prohibited category) because they never had their right to possess a firearm "restored." No doubt, the stipulation contains *some* circumstantial evidence going to the "knowledge of status" element. But it is not overwhelming. *Cf. Johnson*, 899 F.3d at 205–06; *Vazquez* 271 F.3d at 105; *Xavier*, 2 F.3d at 1287. And three (3) concerns, taken together, convince the Court that Montgomery and Perrin established the substantial rights prong, despite the evidence in the joint stipulation that arguably relates to the "knowledge of status" element.

For starters, the Court's jury instruction error was not simply omitting an element of the offense, but rather omitting an element *and* then instructing the jury to the exact opposite effect of the omitted element. *Rehaif* held that "the word 'knowingly' applies both to the defendant's conduct and to the defendant's status." 139 S. Ct. at 2194. That means the Government must prove "that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id.* And § 922(g)(1) defines the relevant status: "any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1).

In the post-*Rehaif* world, the United States would need to prove that Montgomery and Perrin each knew they were a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." *Rehaif*, 139 S. Ct. at 2194. The Court's jury instruction did not just omit that element, it told the jury the exact opposite. The Court instructed: "It is not necessary that the prosecution prove that the defendant knew that the crime was

punishable by imprisonment for more than one year." (ECF No. 695, at 69:23–70:1.) In the Court's estimation, instructing the jury on the opposite of the Supreme Court's holding in *Rehaif*—a holding that applies to Montgomery and Perrin's non-final convictions—is surely more harmful to their substantial rights than if the Court simply left out discussion of the "knowledge of status" element.

Second, our Court of Appeals held long ago that juries are free to reject a stipulation. *See United States v. Williams*, 612 F.2d 735, 739–40 (3d Cir. 1979). In more recent years, the Third Circuit linked the jury's ability to reject a stipulation to the criminal defendant's right to a jury determination as to each and every element of the offense beyond a reasonable doubt. *See United States v. Higdon*, 638 F.3d 233, 240 (3d Cir. 2011) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000)). "That fundamental component of a jury trial cannot be negated or abridged by stipulation." *Id.* Put another way, the jury remains the ultimate finder of fact even when the parties agreed on what happened. So even if Montgomery, Perrin, and the United States' stipulation provides some circumstantial evidence going to the "knowledge of status" element, the jury remained the sole fact finder for every element of the felon in possession charge.

Third, and finally, the stipulation itself is not overwhelming evidence that Montgomery and Perrin knew their prohibited status. While the stipulation surely shows that Montgomery and Perrin knew their prohibited status when they agreed to the stipulation, it does not necessarily show that they knew their status on June 8, 2014—the date alleged in the Second Superseding Indictment. The stipulation also does not expressly say anything about Montgomery and Perrin's knowledge of their prohibited status. And it arguably goes more to the fact that their status was still prohibited on June 8, 2014, than it does to whether they knew that fact. This is not to say that the stipulation presents zero evidence going to the "knowledge of status" element, but simply to

23

point out that its evidence is underwhelming.

The substantial rights prong asks Montgomery and Perrin to show that there is a reasonable probability the error affected the outcome of their proceedings. *Olano*, 507 U.S. at 733–35. The Court concludes they met that burden. The Court's conclusion might be different if discussion of the "knowledge of status" element were simply omitted from the jury instructions. But telling the jury to find the opposite of *Rehaif*'s holding presents a more serious error. That flip-side instruction, coupled with the stipulation's underwhelming evidence and the jury's freedom to reject the parties' agreed upon facts, establishes a reasonable probability that the error affected the outcome of the proceedings. As a result, the error affected Montgomery and Perrin's substantial rights.

## E. Fairness, Integrity, and Public Reputation

Even if a defendant establishes the first three (3) prongs of the plain error standard, the Court may exercise its discretion to grant relief only if "the error 'seriously affect[ed] the fairness, integrity or public reputation of [the] judicial proceedings.'" *Olano*, 507 U.S. at 736 (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). In *Dobson*, the Third Circuit held that when the omission of an element prevents the Court from knowing whether the jury convicted based on sufficient evidence, the "incomplete charge taints the reputation of the judicial process." 419 F.3d at 241. On the other hand, when the trial evidence proving an element omitted from the jury instructions is overwhelming, there is no basis to conclude that the error seriously affected the fairness, integrity, or public reputation of the proceedings. *See Vazquez*, 271 F.3d at 104–05 (quoting *United States v. Johnson*, 520 U.S. 461, 470 (1997)); *see also Johnson*, 899 F.3d at 206 n.8.

Here, there is not overwhelming evidence in the trial record that Montgomery and Perrin

knew their prohibited status. In fact, as the Court already explained, there is next to no evidence in the trial record that could even remotely establish *Rehaif*'s "knowledge of status" element. The United States correctly notes that when Montgomery and Perrin agreed to stipulate to their past convictions, they effectively prevented the prosecution from introducing any more evidence about those convictions—evidence that could prove *Rehaif*'s "knowledge of status" element. (ECF No. 757, at 11.) That is because in *Old Chief v. United States* the Supreme Court held that once the defendant offers to stipulate to a past conviction, under the Federal Rules of Evidence, the prosecution cannot offer further evidence about the nature of that conviction. *See* 519 U.S. 172 (1997). The import of the United States' argument being that, while it did not present evidence beyond the stipulation, it easily could have. And common sense would seem to confirm just that— since both Montgomery and Perrin previously served terms of imprisonment longer than one (1) year, each would surely remember those lengthy sentences, therefore knowing of his prohibited status.

In his *Rehaif* dissent, Justice Alito observed that "if a defendant's knowledge is now [a] necessary [element], the logic of *Old Chief* is undermined." *Rehaif*, 139 S. Ct. at 2209 (Alito, J., dissenting). Still, the issue is not whether evidence of Montgomery and Perrin's knowledge exists, it is whether that evidence is in the trial record. Whether *Old Chief* applies differently after *Rehaif* is an issue that the parties can address on retrial. It is not a reason for this Court to act in place of a jury and consider that once excluded evidence now.[6]

---

[6] This is not to say that the Court disagrees with Justice Alito's point that *Rehaif* altered the prejudice balance the Supreme Court struck in *Old Chief*. To the contrary, the Court finds Justice Alito's concerns to be well-founded. Now that the United States must prove the "knowledge of status" element, it is hard to see why the Court should bar the United States from presenting at least some evidence about a defendant's prior convictions that *Old Chief* might have previously kept out. And given that the United States' burden of proof is "beyond a reasonable doubt," the quantum of such admissible evidence may well be more than just a little bit. Should the United States choose to retry Montgomery's or Perrin's, or both, § 922(g)(1) counts, it will have an opportunity to argue whether *Old Chief* still keeps out all of the evidence of such past convictions that the Court excluded during the first trial. And Montgomery and Perrin will, of course, have an opportunity to respond to any such arguments.

To uphold Montgomery and Perrin's conviction, this Court would need to look at evidence the jury never saw and then apply that evidence to an element the jury never considered. That sort of power shift from jury to judge would seriously undermine the fairness, integrity, and public reputation of the proceedings. And it is simply inconsistent with our system of justice that assigns to ordinary citizens the immense responsibility of weighing evidence and adjudicating guilt. *Cf. Apprendi*, 530 U.S. at 498 (Scalia, J., concurring) ("Judges, it is sometimes necessary to remind ourselves, are part of the State . . . . The founders of the American Republic were not prepared to leave [criminal justice] to the State, which is why the jury-trial guarantee was one of the least controversial provisions of the Bill of Rights. It has never been efficient; but it has always been free." (parentheses omitted)).

Having met the plain error standard's first three (3) prongs, Montgomery and Perrin's motions similarly establish the fourth prong. The omission of the "knowledge of status" element, and lack of evidence in the trial record related to that element, affected the fairness, integrity, and public reputation of Montgomery and Perrin's conviction. The Court will exercise its discretion to grant relief in the form of a new trial on Counts III and IV.

.

## IV. CONCLUSION

Montgomery and Perrin met their burden to establish plain error. In the end, the Court's decision to vacate and direct the retrial of Montgomery and Perrin's § 922(g)(1) convictions might not end up making a numerical difference in their Sentencing Guidelines calculations, given the seriousness of their other counts of conviction. For Montgomery, his conviction on Count VII carries a statutory mandatory sentence of life in federal prison.[7] For Perrin, the impact of the § 922(g)(1) conviction is similarly limited. The Probation Office informs the Court that Perrin's conviction at Count III groups with his convictions at Counts I and II, but does not affect the low end Guidelines calculation or whether he is a Career Offender under the Advisory Guidelines. And while Count III affects Perrin's potential Armed Career Criminal Act ("ACCA") status, it does not impact his Guidelines calculation, because the grouped charges at Counts I and II already exceed the fifteen-year mandatory minimum sentence under ACCA. So ACCA status would only matter for Perrin in two (2) possible scenarios. First, if the Court decided to run the sentence on Count III consecutive to the other counts. Second, if the Court decided to vary so substantially downward that it would impose a sentence at Counts I and II of less than 180 months,[**] which would be a downward variance of nearly sixty (60) percent.[8]

But despite any practical impact—or lack thereof—on their ultimate sentences, the grant

---

[7] The Court's reference to Montgomery's sentencing exposure is in no way intended as a final calculation of his Advisory Guidelines or the sentence the Court will impose. Only the sentence actually determined on the day of Montgomery's sentencing hearing is the final word. The Court's reference here is simply meant to note the likely practical impact (or non-impact) of the Court's decision here.

[**] The Court's New Trial Opinion (ECF No. 783), erroneously included reference to Count III in this sentence. This Amended Opinion removes that reference to Count III. This is the only amendment to the Court's Opinion at ECF No. 783.

[8] The Court's reference to Perrin's sentencing exposure is in no way intended as a final calculation of his Advisory Guidelines, his ACCA eligibility, or the sentence the Court will impose. Only the sentence actually determined on the day of Perrin's sentencing hearing is the final word. The Court's reference here is simply meant to note the likely practical impact (or lack thereof) of the Court's decision here.

27

of a new trial on Montgomery and Perrin's § 922(g)(1) counts is required. The process by which the accused is convicted of a crime against the United States is a demanding one. And that process does not allow a judge to, in effect, determine guilt by considering evidence never presented to the jury, in order to find an element not only omitted from the jury's instructions but stated by the Court to the direct opposite effect. The Court recognizes that this decision is yet another variation on the theme of post-*Rehaif* case law. But the procedural posture and facts of this case require granting the new trial motions. Montgomery and Perrin's Motions for New Trial (ECF Nos. 737 and 745), are **GRANTED**. An appropriate Order will follow.

Mark R. Hornak
Chief United States District Judge

Dated: March 4, 2020
cc:    All counsel of record via ECF